### PEOPLE *v.* BARKER.

*(Supreme Court, General Term, First Department. December 31, 1891.)*

CRIMINAL LAW—TRIAL—MISCONDUCT OF PROSECUTING ATTORNEY.

    Reference made by a district attorney, on trial of an indictment for assault, to a newspaper article reflecting on defendant's character, not introduced in evidence, and a statement by him to the jury that defendant's reputation was vile, when the evidence was to the contrary, are grounds sufficient, notwithstanding the court's admonishing the jury to disregard extraneous questions, for the reversal of a conviction, where the weight of the evidence is in defendant's favor, and it appears that some influence other than the evidence must have determined the verdict.

    Appeal from court of general sessions, New York county.

    Indictment against James Barker for assault in the second degree. Judgment of conviction of assault in the third degree. Defendant appeals. Reversed.

    Argued before VAN BRUNT, P. J., and BARRETT and PATTERSON, JJ.

    *Howe & Hummel,* (*Donohue, Newcombe & Cardozo,* of counsel,) for appellant. *De Lancey Nicoll,* Dist. Atty., (*McKenzie Semple,* Asst. Dist. Atty., of counsel,) for the People.

    VAN BRUNT, P. J. Upon an examination of the record in this case we do not find any exceptions to the admission or exclusion of testimony; but it

is claimed upon the part of the appellant that the prosecution of this case was conducted in such a manner that the rights of the defendant were seriously invaded, in that statements were made reflecting upon the character of the defendant and dwelt upon in the address of the district attorney to the jury, in respect to which no evidence was offered; neither would evidence have been admissible. The record submitted to us, however, presents but one or two instances in which the district attorney seems to have trespassed upon the rights of the defendant, viz., the reference to a newspaper article which was not admitted before the jury, stating its character, and characterizing the reputation of the defendant in the community as vile, when there was not only no evidence whatever before the jury to that effect, but the only evidence that was offered tended to exactly the opposite conclusion. The statement of the district attorney that his remark was merely argumentative, and that he would give to the jury the reasons for his assertion, tended perhaps to show that it was not intended to be more than a comment upon the evidence. It is possibly true that more references occurred upon the trial to these outside and improper matters than appears upon the record; otherwise the learned judge who presided at the trial would not have thought it necessary to devote so large a portion of his charge to admonishing the jury to refrain from considering these extraneous questions in determining the guilt or innocence of the defendant. These circumstances, however, were not of a sufficiently grave character in themselves to justify the court in interfering with the verdict. But in view of the weight of the evidence in favor of the defendant, and the character of the verdict, it would appear that some influence other than that which would properly result from a consideration of the evidence determined the verdict. This will appear from a brief consideration of the case, and of the fact that the complainant stands absolutely uncorroborated in respect to every material point in the case, and pointedly contradicted by the only witness to the assault examined on his behalf, in respect to one of its prominent features.

The story of the complainant is that upon the 19th of September, 1889, the complainant and a companion by the name of Corcoran went into a saloon at the corner of Eighth avenue and Twenty-Fifth street for the purpose of taking a drink, they being on their way to the Fourteenth-Street Theater, which was situated in Fourteenth street, just west of Sixth avenue; that they went to the bar, and ordered their drinks; that at this time there were five or six men at the other end of the room, but the complainant did not notice that the defendant was among them; that the complainant commenced a conversation with the bar-keeper in respect to a man of the name of Kinnan, and the complainant said to the bar-keeper that Mr. Kinnan "ought to hit Mr. Barker a punch in the nose for offering such a thing to him," (referring to a ticket that the defendant had given to Kinnan for the street-cleaning department;) that as soon as he made that remark he was grabbed by Barker, who butted him, and struck him under the mouth with his fist, and threw him on the floor; that the complainant was in a dazed condition from the violence of the assault, but, while lying on the floor, saw Barker standing up about to kick him, and that his intention was to kick him in the privates, and he said to him, "Don't do that; no one but a brute would do that;" whereupon defendant kicked him three or four times, the first time in the privates. During this scuffle the complainant was not sure whether he hit Barker or not, but he believes that he did. The complainant further testified that he did not know how he got up, but was "kind o'dazed," and that his friend Corcoran fetched him out of the store, and he went to another liquor store, and a doctor was brought to him. It further appears from the medical testimony that the complainant was severely injured in one of his testicles, and was confined to his bed for a considerable period of time because of such injury. Corcoran was examined as a witness, and testified that he was in the saloon with the

v.17 N.Y.s.no.1—2

complainant, and that the complainant stated to the bar-keeper that if he was in Kinnan's place he would punch Jim Barker in the nose; that witness turned away to get a piece of cheese from the bar, and when he turned back he saw the complainant and the defendant clinched, and saw the defendant butting him with his head, and knocking him down on the floor; that, when he got the complainant on the floor, defendant said, "You son of a bitch, you will lick Jim Barker, will you?" and punched him twice; and that as he (defendant) was getting up he kicked the complainant, who then got up and went to the side door, and as he stood in the door said, "Nobody would do that but a brute;" and then Barker "pulled out," and kicked him again. This was all the evidence in reference to the assault upon the part of the people.

The defendant was the first witness examined on his own behalf. He testified to being in the saloon on the night in question, when the complainant and Corcoran came in, and went up to the bar and called for a drink, and commenced talking to the bar-keeper, and the ticket for the street-cleaning department was spoken of, and complainant said, "We don't want that ticket. My friend won't use no ticket like that. Barker ought to stick that ticket up his ass. If I was in this man's place I would punch Barker in the nose. Barker is no good," etc. That Barker then walked from the end of the room where he was, going towards the complainant, for the purpose of going to the wash-room or water-closet, and that, as he got opposite to the complainant, the complainant turned around from the bar, and said, "Here's the son of a bitch now," and struck him on the left side of the head so powerful a blow that he staggered. That they then clinched, and the defendant threw the complainant, and he fell on the iron rail at the foot of the bar, and they rolled off together on the floor, where the defendant held the complainant until he promised to keep still if he would let him up, whereupon defendant let him up, and as soon as he got up he struck the defendant again, and the defendant threw him again on the floor; and that during the encounter several blows were exchanged; the defendant, however, denying that he kicked complainant at all. On behalf of the defendant five witnesses were examined who were present in the saloon at the time of the encounter, all of whom testified to the commencement of the assault by the complainant, to the fact of abusive language having been used by the complainant, (although they differed somewhat as to its phraseology, some stating more than others, and also differed as to the side of the head upon which the first blow was struck, and as to whether, when complainant fell, he fell upon the iron rail at the bottom of the bar,) and all concurring that the defendant did not kick the complainant,—contradicting him, in fact, in respect to all the main features of the assault as testified to by him. The variance in the testimony of these witnesses is urged by the learned district attorney as an evidence that they were not testifying truly as to what they had seen, but simply for the purpose of shielding the defendant from the consequence of his acts. But this criticism does not seem to me to be well founded, because it is seldom that even two witnesses will agree in respect to the details of a transaction such as this was, where there is necessarily so much excitement and confusion, and the parties are acting with the greatest quickness, and where the observers are differently placed. The story of the complainant in reference to what occurred at the time he was kicked by Barker certainly does not commend itself with great force to the judgment. He states that, before Barker kicked him at all, he saw that he intended to kick him in the privates, and that he had time enough to say, "Don't do that; no one but a brute would do that," before the kick was delivered. This story seems to be simply incredible, even if it is physically possible to do the act in the manner testified to by complainant, as to which there is much doubt, to say the least. The complainant's witness Corcoran tells an entirely different story in reference to the transaction of the kicking. He says that as defendant was getting up he

kicked the complainant. Exactly how the defendant was able to do that he did not explain. He then says that the complainant got up, and was standing in the door when he made the remark testified to, and that Barker then kicked him again. He was positive that the complainant was standing at the time he made the remark, and defendant was going to kick him, and that it was after all the trouble that occurred on the floor,—a condition of affairs absolutely and pointedly different from and incompatible with that which had been sworn to by complainant. If this evidence is true, then the complainant testified falsely as to a material part of this assault, in respect to which it is not to be conceived that he could honestly make so radical an error, and therefore his testimony in other particulars, when contradicted, as it was, by a multitude of witnesses, should not have been entertained by a jury. It is to be observed that he is the only witness as to who struck the first blow, upon the part of the people, as Corcoran did not see the commencement of the assault; and yet the jury seem for some reason to have given credit to the testimony of the complainant, although impeached in a material point as already suggested, not only by the defense, but also by the only witness to the assault called on his behalf. And it would appear from the verdict of the jury that they did not believe this point of his story, because, if this injury was inflicted in the manner claimed by him, then he certainly had suffered grievous bodily harm at the hands of the defendant in the commission of an outrageous assault; and the defendant was clearly guilty of an assault in the second degree. But the jury found a verdict of assault in the third degree, in which the element of grievous bodily harm is wanting. The jury thus having found that the complainant testified falsely in respect to what he evidently considered a material part of his evidence, it seems remarkable that they should have believed his story as to the commencement of the assault, although contradicted by every witness who saw it. Ordinarily a defendant cannot complain that a verdict has been rendered of a lesser degree of crime than the facts warranted; but in the weighing of testimony in a case like the one at bar, where it appears (if only from the charge of the court) that extraneous matters had been brought into the case by counsel, and thus the jury attempted to be prejudiced, and the verdict apparently being plainly against the weight of evidence, the nature of the verdict necessarily gives some insight into the influences which operated upon the jury in the rendition thereof. If the defendant was guilty at all, he was guilty of an unjustifiable assault resulting in grievous bodily harm, and the rendition of a verdict for a lesser offense seems, under the evidence in this case, to indicate either a misconception of that evidence by the jury or some prejudice against the defendant. Under such circumstances justice would seem to require a new trial, in order that the guilt or innocence of the defendant may be determined upon evidence and not upon suggestion. All concur.